**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| James Mayse, | ) | **CASE NO. 1:13 CV 2552** |
| | ) | |
| Plaintiff, | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| vs. | ) | |
| | ) | |
| Ferro Corporation, et al., | ) | <u>**Memorandum of Opinion and Order**</u> |
| | ) | |
| Defendants. | ) | |

<u>Introduction</u>

This matter is before the Court upon defendants' Motion for Summary Judgment (Doc. 25).  This case arises out of the termination of plaintiff's employment. For the following reasons, the motion is GRANTED.

<u>Facts</u>

Plaintiff James Mayse filed his Complaint in the Cuyahoga County Common Pleas Court against defendants Ferro Corporation, Harold Pruett, and Cynthia Vance.  Defendants removed the case to this Court on the basis of the Labor Management Relations Act, § 301, which preempts state law claims which implicate rights created by the Collective Bargaining Agreement (CBA).

1

Plaintiff had been employed by Ferro at its Cleveland manufacturing facility since 1992. Plaintiff was a member of the Union, subject to the CBA. Plaintiff worked as a tow motor operator beginning in February 2010. A tow motor is also known as a Powered Industrial Truck. As a tow motor operator, plaintiff was responsible for loading and unloading pallets from trucks or semi-trailers by driving the tow motor from the fixed dock onto the truck or trailer.  (pltf. depo. 5, 9-10)

Ferro's Cardinal Rules of Safety, effective 2007, set forth broad safety principles. Details are then spelled out in Ferro's various policies and procedures.  (Curtiss Tschantz decl.; pltf. depo. Ex. 16)  Plaintiff acknowledged at deposition that the Cardinal Rules of Safety, which prohibit the operation of equipment in an unsafe manner, were in effect from August 2007 through the remainder of his employment at Ferro and that he was responsible for complying with these rules.  (pltf. depo. 89-90) A violation of the Cardinal Rules of Safety was grounds for immediate termination under the CBA.  (Tschantz decl. Ex. B at 41)

Ferro implemented the Powered Industrial Truck Safety Policy, dated November 15, 2011, establishing policies and procedures for the safe operation of tow motors.  (pltf. depo. Ex. 14) Plaintiff acknowledged at deposition that this policy was in effect from that release date through the end of his employment and that he was responsible for following its requirements. (pltf. depo. 86-87) The policy states that "Semi-trailers must be **dock locked and chocked** before the powered industrial vehicle enters the trailer."  (pltf. depo. Ex. 14 at 5, emphasis in original) This is known as the Two-Restraint Rule.  (Tschantz decl.; Cynthia Vance decl.)  In essence, according to Cynthia Vance, Ferro's Warehouse Manager, the Two-Restraint Rule requires Ferro tow motor operators to visually confirm that two forms of restraint (the trailer's

2

wheels are chocked and the dock lock is properly engaged) are in place before driving a Ferro tow motor onto a trailer. (Vance decl.)

According to plaintiff, a dock lock physically locks the trailer to the dock. It is set by pushing a button on a box mounted to the wall.  There is a red light and a green light.  When the dock lock is properly engaged, the light is green. When the dock lock is not properly engaged, the lights flash red and green and an audible alarm sounds. (pltf. depo. 94-95, 145-152) Wheel chocks are triangular bumpers that are manually placed against the wheels of a trailer to prevent the trailer from rolling. (Vance decl.)

According to plaintiff's testimony, on May 24, 2012, plaintiff asked the driver of a semi-trailer whether his wheels were chocked.  When the driver said that they were, plaintiff "took his word for it" and did not check or verify to see that the wheels were chocked.  Plaintiff then engaged the dock lock and drove onto the trailer to remove the first pallet.  As he was backing his tow motor off the trailer to return to the dock, the dock alarm sounded and the lights were flashing from green to red. Plaintiff thought the lights were malfunctioning and he turned off the alarm because he "wasn't sure" of its purpose.  After the alarm sounded he did not visually check whether the wheel chocks were in place.  In fact, after the alarm sounded, plaintiff did not do anything to confirm that there were any forms of restraint in place to prevent the trailer from moving. Plaintiff attempted to finish loading the truck but, as there were no restraints in place, plaintiff and his tow motor "crashed to the ground" and he was injured. Plaintiff was off work for a few months on workers' compensation leave.  He was then cleared to return to perform light duty and Ferro created non-physical tasks for him.  After taking leave under the Family and Medical Leave Act, plaintiff returned to work on April 1, 2013 to full duty with no restrictions.

3

Plaintiff returned to his tow motor operator job. (pltf. depo. 90-114)

Following the May 24, 2012 incident, Ferro conducted an investigation. The report of the investigation states that plaintiff

> engaged the dock lock and asked the truck driver if the wheels were chocked- to which the driver replied 'yes'... [plaintiff] then proceed[ed] to load the first pallet of a three pallet load- as he was exiting the trailer the dock lock alarm sounded; he then manually overrode the alarm and entered the truck with the second pallet.

The report identified the cause of the incident as follows:  "The trailer was not positively restrained specifically: Wheel chocks were not in place/ The dock lock was initially engaged (was subsequently disengaged.)" (pltf. depo. Ex. 19) According to Curtiss Tschantz, Ferro's Director of Human Resources, Ferro could have terminated plaintiff's employment under the terms of the CBA for plaintiff's violation of the Two-Restraint Rule, but instead decided to impose the lesser discipline of suspension. (Tschantz. decl.)  Plaintiff grieved the suspension through the Union, and the suspension was upheld.  The Union accepted the suspension and took no further action regarding the grievance. (*Id.* Exs.)

In June 2012, Ferro implemented policies revising the Two-Restraint Rule.  Policy FSRW1119 states: "1) Truck trailers or trucks without trailers which are positioned to be loaded at the loading dock are to have one wheel chocked and have dock locks engaged. 2) Before a tow motor driver enters a trailer, they must visually verify that one truck wheel is chocked and properly engage dock locks.  3) The dock plate will then be positioned by the team member.  4) Two forms of physical trailer restraints must be utilized before entering any trailer. If dock locks cannot be properly engaged, glad hand lock from Ferro dock is given to driver to attach to their air brake hose.  Shipping Operator [tow motor operator] must observe the attachment of glad hand lock and receive the key for the lock before entering the trailer."  (pltf. depo. Ex. 23) A

4

glad hand is a device that seals the air intake valve of a trailer's brake system and prevents the brakes from disengaging.  This prevents the trailer from moving. (Vance decl.)

Additionally, Policy FSRW1120 of the same date recognizes that "two forms of physical trailer restraints must be engaged before entering the trailer."  (pltf. depo. Ex. 24) Finally, the tow motor job safety analysis, dated June 2012, likewise states, "Two forms of physical trailer restraints must be utilized before entering the trailer."  These are to properly engage the dock locks and visually verify that one truck wheel is chocked, and if the dock locks cannot be properly engaged, the glad-hand locks must be used.  (pltf. depo. Ex. 25) Plaintiff was familiar with these policies. (pltf. depo. 134-137)

Plaintiff testified that from November 2012 to his return to work on April 1, 2013, he was trained three times on each of these three documents.  (pltf. depo. 139-141; Exs. 26, 27, 28) He also acknowledged that upon his return, he was "fully aware of the new policies and procedures and requirements for loading, unloading and entering trailers and locking and docking them." (pltf. depo. 141-142)

On April 19, 2013, plaintiff went to unload a trailer.  According to plaintiff, he visually confirmed that the wheels were chocked but only "assumed" that the dock lock was engaged by someone else based on the fact that the packing slip was up on the magnetic board. He did not set the dock lock. Plaintiff acknowledged that two forms of restraint were not in place. Plaintiff testified that two pallets were blocking his vision and so he could not see the flashing lights which would have indicated that the dock lock was not engaged. Shortly after the incident, plaintiff took a cell phone video that actually shows that the flashing lights were not obstructed by the pallets. (pltf. depo. 147-159) (Doc. 26, 27)

5

Erin Van Natter, the non-Union Shipping Clerk at the facility, avers as follows.  The Two-Restraint Rule requires that Ferro tow motor operators visually confirm that two forms of restraint are in place before driving a Ferro tow motor onto a trailer.  On April 19, she saw plaintiff exiting a trailer on his tow motor while a dock lock was in override.  Van Natter assumed that plaintiff was using a glad hand lock as the second form of restraint.  Van Natter saw that the truck driver had left the dock and that plaintiff had not retrieved from the driver the glad hand, which is owned by Ferro.  She then asked plaintiff if he remembered to get the glad hand lock back from the driver. Plaintiff responded that he did not use a glad hand lock.  It then became apparent to Van Natter that plaintiff had entered the trailer using only one form of restraint- the wheel chocks.  Van Natter immediately reported the safety violation to her manager, Cindy Vance.  Van Natter was later asked to prepare a statement.  She did so indicating the same.  (Van Natter decl. and Ex.)

Plaintiff was suspended for violating the safety rules and then terminated. Plaintiff acknowledged that he was terminated for not having the two forms of restraint in place. (pltf. depo. 158-159, 179) Plaintiff grieved his termination.  After a hearing, the decision was upheld and the Union declined to proceed to arbitration "after reviewing all the facts."  (pltf. depo. Ex. 36)

Plaintiff filed his Complaint setting forth six claims.  Count One alleges retaliatory wrongful termination under Ohio Revised Code § 4113.52.  Count Two has been dismissed.  Count Three alleges workers' compensation retaliation.  Count Four alleges disability discrimination under Ohio statutory law.  Count Five alleges wrongful termination based on disability discrimination.  Count Six has been dismissed.

6

This matter is now before the Court upon defendants' Motion for Summary Judgment.

**<u>Standard of Review</u>**

Summary Judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56(c)); *see also LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993). The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits," if any, which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)). A fact is "material only if its resolution will affect the outcome of the lawsuit." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). Accordingly, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir.1993). The nonmoving party may not simply rely on its pleading, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456 (1992). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury

7

could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of his case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Moreover, if the evidence is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citation omitted).

**<u>Discussion</u>**

Defendants argue that all claims fail because plaintiff cannot demonstrate that the asserted reason for his termination was actually pretextual.

All of plaintiff's claims require him to show pretext. Count One is a claim under Ohio's whistleblower statute which requires plaintiff to first make a prima facie and then to demonstrate pretext if defendants state a non-retaliatory reason for the termination. *Klepsky v. United Parcel Service, Inc.*, 489 F.3d 264 (6th Cir. 2007). Count Three is a claim for workers' compensation retaliation which requires the plaintiff to establish a prima facie case of retaliatory discharge and pretext once the employer gives a legitimate, non-retaliatory reason for the discharge. *Onderko v. Sierra Lobo, Inc.*, --- N.E.3d ----, 2014 WL 4656873 (Ohio App. 6th Dist. September 19, 2014). Counts Four and Five allege disability discrimination which also require plaintiff to show that his termination was a pretext for discrimination. *Ames v. Ohio Dept. of Rehab. & Corr.*, --- N.E.3d ----, 2014 WL 5460451 (Ohio App. 10th Dist. October 28, 2014).

Defendants point to plaintiff's deposition testimony wherein he acknowledged that when he loaded the truck on April 19, 2013, two forms of restraint were not in place (pltf. depo. 147), that he was terminated because he violated the Two-Restraint Rule (pltf. depo. 158-159), and if

not for the violations of the Two-Restraint Rule on April 19, 2013, plaintiff believed he would still have his job (pltf. depo. 179).

Plaintiff argues that his termination was pretextual because he did not violate any policy on May 24, 2012 and, therefore, the April 19, 2013 incident was actually his first and only safety violation in his twenty year career with Ferro and other employees have not been terminated for a first violation.  Plaintiff asserts, relying on the following evidence, that as of May 24, 2012, he was required to do nothing more than verbally verify that a driver's wheels were chocked prior to loading a trailer.  Plaintiff avers, "On May 24, 2012, I followed Ferro's practices and procedures in place for loading and unloading trailers.  On May 24, 2012 I was required to verbally verify that the wheels of a trailer were chocked prior to loading or unloading the trailer."  (pltf. aff.)  Additionally, "Prior to May 24, 2012, I was never provided with any written safety policies or processes identifying a rule requiring two forms of restraint to enter a trailer on a tow motor."  (*Id.*) Plaintiff points to a June 2011 Power Point presentation which states that "Wheels must be chocked or truck locked to the dock."  (Doc. 30 Ex. 4) He also points to a June 1996 Ferro policy which required:

> 1. Truck trailers or trucks without trailers which are positioned to be loaded at the loading docks are to be chocked.
>
> 2. Chocking of the truck is to be done by the truck driver. Before a tow motor driver enters a trailer, they should check with the driver, to ensure chocks are in place.
>
> 3. The dock platform will be positioned by a team member.

(Doc. 30 Ex. 2) Finally, plaintiff points to a July 1992 Ferro policy which states, "The truck trailers or trucks will be positioned and prepared for loading as indicated in [the June 1996 policy stated directly above], especially chocking of the wheels."  (Doc. 30 Ex. 3) Plaintiff

contends that these three Ferro documents show that as of May 24, 2012, plaintiff need only have verbally verified that a driver's wheels were chocked prior to loading the trailer. For the following reasons, plaintiff's assertions are not persuasive.

First, all three documents to which plaintiff refers pre-date the November 2011 policy which required that two forms of restraint be in place.  Specifically, Ferro's Powered Industrial Truck Safety Policy, dated November 15, 2011, states, "**Semi-trailers must be <u>dock locked and chocked</u>** before the powered industrial vehicle enters the trailer."  (emphasis in the original) At his deposition, plaintiff was shown this policy and asked the following:

> Q.  Do you recognize this document as the EHS policy covering powered industrial truck safety policy, release date November 15, 2011?
>
> A.  Yes. This does look familiar.
>
> Q.  And this policy was in effect from November of 2011 forward?
>
> A. I'm not sure if it's still in effect.
>
> Q.  Okay.  But during the time from November of 2011 through your last day of employment at Ferro, this policy that's marked Exhibit 14 was in effect, correct?
>
> A. I think so.
>
> Q.  And you, as a tow motor operator, were responsible for following these requirements?
>
> A. I'm pretty sure, yes.

(pltf. depo. 86-87) Therefore, plaintiff admits that the Two-Restraint Rule was in effect at the time of his May 2012 injury.  The other documents which pre-date this policy were not the current statements of the safety policy regarding the loading of trailers by tow motors. Furthermore, the investigation report concludes that the incident was caused by the trailer not being restrained by the wheel chocks or dock locks, thereby indicating that both were required.

10

Second, plaintiff was shown the Power Point document and testified that he did not recall looking at the Power Point or attending a Power Point in June 2011 on mobile equipment lifting devices.  (pltf. depo. 76) He also testified that he had "never seen these."  Further, when asked, "Do you recall there being Power Points at some of these training sessions?" plaintiff responded, "No." (*Id.*)  Thus, while plaintiff acknowledged that he was familiar with the November 2011 policy, he admits that he never saw the Power Point.

Third, even if the three prior documents show that only one form of restraint was required on May 24, 2012, plaintiff testified that there were no forms of restraint in place when he and his tow motor fell:

> Q.  And by virtue of the fact that you fell, at least at that point it was obvious that there had been no forms of restraint in place, correct?
>
> A.  Yes.  Not even the parking brake, the wheel chocks, any of that.  The truck was in neutral.  So, yeah.  There was no forms of restraint.

(pltf. depo. 101-102)

Fourth, plaintiff argues that the 1996 policy, quoted above, required only that the wheels be chocked.  But, that policy further required, "**Note: Make sure that the dock platform is locked when loading a truck.  Locking is done at the platform control panel by switching the control to 'off.' "** (emphasis in original) Therefore, as of that 1996 policy, the wheels had to be chocked and the dock platform locked.

For these reasons, plaintiff fails to raise an issue of fact as to the legitimateness of his first violation and, consequently, his argument that the second violation was actually his first is to no avail.  Moreover, it is worth noting that plaintiff did challenge his May 2012 violation through the Union and the discipline was upheld because plaintiff was found to have committed

11

a safety violation.  The Union chose not to further pursue the grievance.

The Court need not, therefore, address plaintiff's further argument that no comparator employee was disciplined, like plaintiff, for his first safety violation.  Nonetheless, defendants present evidence that prior to May 24, 2012, no employee had violated the Two-Restraint Rule.  (Vance decl.; Tschantz decl.)  After that incident, one tow motor operator violated the Rule in March 2013.  He was suspended.  In June 2012, an employee being trained as a temporary tow motor operator violated the Rule during a training run.  He was immediately suspended from any further tow motor operator duties and was permanently barred from working as a tow motor operator.  (Tschantz decl.) Plaintiff is the only employee to have violated the Rule twice.  (*Id.*)

Plaintiff also complains that Van Natter was not disciplined for her involvement in plaintiff's second incident when she watched as the non-Ferro truck driver put the dock lock into override to silence the audible alarm which would have notified plaintiff that the lock was not engaged. Of course, the revised safety policy required that *plaintiff* ensure that the dock lock was engaged before driving his tow motor onto the trailer.  Moreover, Warehouse Manager Vance made clear that the Ferro safety policy only applies to Ferro tow motor operators, and not non-Ferro truck drivers who do not operate Ferro tow motors.  She declares:

> It is commonplace and routine for non-Ferro truck drivers to set the dock plate and to set a dock lock after backing a trailer into the Ferro dock... Drivers oftentimes set a dock plate so that they can board the trailer from the dock and use a hand dolly to move freight manually, all of which would be done before a Ferro tow motor operator would drive a tow motor onto the trailer.
>
> It does not create an unsafe condition for a non-Ferro driver to set a dock lock and to override it... It is, however, unsafe to drive a tow motor between a dock and an unsecured trailer.... Regardless of what the non-Ferro truck driver does, it is always the responsibility of the Ferro tow motor operator to visually confirm that two forms of restraint are in place before the Ferro to motor operator drives a Ferro tow motor onto a trailer.

12

(Vance decl.)  Likewise, Van Natter testified that the non-Ferro truck drivers are allowed to operate the dock locks to get their loads set.  (Van Natter depo. 65-68)

Regardless, Van Natter made clear that the fact that the dock lock was in override did not, in itself, create an unsafe situation because that is the purpose of the glad hand lock- the second form of restraint if the dock lock is in override.  (Van Natter decl.) Plaintiff was trained in the use of the glad hand lock and failed to utilize it.  Thus, Van Natter should not have been disciplined for her actions.  Even if she should have been disciplined, she is not similarly situated to plaintiff as she is a clerical, non-Union employee, unlike plaintiff.

For these reasons, the Court agrees with defendants that the evidence shows that plaintiff did violate the trailer entry safety rules on both occasions and, therefore, the asserted reason for plaintiff's dismissal was legitimate and plaintiff fails to show pretext.

Because it is clear that plaintiff cannot demonstrate pretext, it is unnecessary to decide, as to each claim, whether plaintiff could even demonstrate a prima facie case. Briefly, however, the Court agrees with defendants that plaintiff cannot do so.

Count one alleges a violation of Ohio's whistleblower statute which requires plaintiff to first make a prima facie case by showing that 1) he engaged in activity which would bring him under the protection of the statute, 2) he was subject to an adverse employment action, and 3) there was a causal link between the protected activity and the adverse employment action." *Wood v. Dorcas*, 142 Ohio App.3d 783 (2001).  Ohio courts recognize, "In order for an employee to be afforded protection as a "whistleblower," such employee must strictly comply with the dictates of R.C. 4113.52. Failure to do so prevents the employee from claiming the protections embodied in the statute." *Contreras v. Ferro Corp.*, 73 Ohio St.3d 244 (1995) The

13

statute requires "that the employee orally notify his or her supervisor or other responsible officer of the employer of the violation and subsequently file with that person a written report that provides sufficient detail to identify and describe the violation."  *Id.*  Plaintiff testified at deposition that he did not submit a written complaint about a safety violation to any Ferro supervisor or manager.  (pltf. depo. 178) In his brief, plaintiff asserts that he verbally complained about unsafe working conditions and "participated in the creation of written notes and written work orders" regarding safety issues. Plaintiff contends that he did make a written report of his safety complaints. But, plaintiff points to the August 30, 2012 Grievance Report submitted on his behalf by the Union following his suspension for the first violation occurring on May 24, 2012. (Doc. 30 Ex. 18) This is not a written report filed by plaintiff to his supervisor or manager detailing a safety violation.

Count Three alleges workers' compensation retaliation   Plaintiff filed a workers' compensation claim following his May 24, 2012 injury.  He was discharged in April 2013.  A claim of this nature affords protection "only against termination directly precipitated by the filing of a workers' compensation claim."  *Markham v. Earle M. Jorgensen Co.*, 138 Ohio App.3d 484 (Ohio App. 8th Dist.2000).  The evidence shows that plaintiff admitted that two restraints were not in place in the 2013 incident and he was terminated for violating the Two-Restraint Rule.  Additionally, after plaintiff filed his workers' compensation claim, Ferro returned him to work and created a light duty position and then returned him to full duty with no restrictions.  He was only terminated once he was involved in the second safety violation.  There

14

is no evidence that the workers' compensation claim directly precipitated plaintiff's termination.[1]

Counts Four and Five require plaintiff to show that he is disabled. Plaintiff points to his deposition testimony that as a result of the May 2012 injury, he is "permanently partially disabled." But, plaintiff admitted at deposition that he returned to his regular job in April 2013 with no work restrictions. (pltf. depo. 113-114)

For all of these reasons, plaintiff's claims fail and defendants are entitled to summary judgment.

**Conclusion**

For the foregoing reasons, defendants' Motion for Summary Judgment is granted.

---

[1]     Plaintiff also argues that he has direct evidence of retaliation in the form of an email written by defendant Pruett on October 19, 2012 wherein Pruett states,"What is our commitment to an employee who is on light duty/restrictions... specifically Jim Mayse. You watch him, he barely moves around. At what point can we punt and say, 'I do not have a job for you to do.' He could milk it for like years?" (Doc. 30 Ex. 11) The Sixth Circuit recognizes, "Direct evidence does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group. The evidence must establish not only that the plaintiff's employer was predisposed to discriminate on the basis of [workers' compensation filing], but also that the employer acted on that predisposition." *Demyanovich v. Cadon Plating & Coatings, L.L.C.*, 747 F.3d 419 (6th Cir. 2014). This Court cannot conclude that Pruett's email falls within the definition of direct evidence. Even if it did, as stated above, there is no evidence the decision to terminate him was actually a pretext for workers' compensation retaliation. Plaintiff also asserts that Vance unfairly kept track of his productivity. But, the evidence shows that defendants kept an ongoing log for all shipping and tow motor operators for the work they perform. (Vance depo. 26)

15

IT IS SO ORDERED.


_/s/ Patricia A. Gaughan_____

PATRICIA A. GAUGHAN

Dated: 12/8/14                         United States District Judge